## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ADAM GARBER, | : | CIVIL ACTION NO. |
| Gwinnett Cnty. ID # 99499879, | : | 1:16-CV-00020-AT-JCF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SHERIFF R. L. BUTCH CONWAY, | : | PRISONER ACTION |
| COL. DON PINKARD, | : | 42 U.S.C. § 1983 |
| MAJOR D. HUGHES, | : | |
| CORP. MARTIN CAMPBELL #SO-537, | : | |
| DEPUTY TIMOTHY RICKS #SO-1405, | : | |
| DEPUTIES SOUTHARD & SUDDETH, | : | |
| UNKNOWN DEPUTIES, | : | |
| Defendants. | : | |

### MAGISTRATE JUDGE'S ORDER
### AND FINAL REPORT AND RECOMMENDATION

Plaintiff, a pretrial detainee at the Gwinnett County Detention Center ("GCDC")

in Lawrenceville, Georgia, seeks relief under 42 U.S.C. § 1983. (Doc. 1). He has filed

Consolidated Motions For Counsel And Memorandum Of Law In Support,

Certification Of Class Action, And Motion For Defendants To Provide The Interest Of

Persons Corporate Disclosure Statement (Doc. 5); a Motion To Add Two History

Exhibits (Doc. 6), which is **GRANTED**; two amended complaints (Docs. 7, 8); a

second set of Consolidated Motions (Doc. 9); a Motion To Advance The Cause For

Preliminary Injunction (Doc. 10); and a Motion In Support For Preliminary Injunction

And Other Motives (Doc. 11).  Plaintiff has received leave to proceed *in forma pauperis* in this matter, which is now ready for an initial screening.

## I.    The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

AO 72A
(Rev.8/82)

(internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives."  *Id.* at 678-79.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.

II.    **Discussion**

Plaintiff sues the following Gwinnett County officers: (1) Sheriff R. L. Butch Conway; (2) Col. Don Pinkard; (3) Major D. Hughes; (4) Corp. Martin Campbell; (5) Deputy Timothy Ricks; and (5) Deputies Southard and Suddeth and unknown "classification" deputies.  (Doc. 1 at 2; Doc. 7 at 1-2).

A.    **Plaintiff's Initial Complaint**

In his initial complaint, Plaintiff alleges that he asked Campbell and Ricks for a pre-grievance form on November 6, 2015, and "moments" later he was "sent to punitive segregation on [a] fabricated charge[] of insubordination to a staff member." (Doc. 1 at 4).  He asserts that from 7:52 to 9:40 p.m., he asked Ricks for a grievance and was denied.  (*Id.*).  Ricks then called Campbell, who came to A-Pod, where Plaintiff was housed, at about 10 p.m.  (*Id.*).  Plaintiff asked Campbell for a grievance form.  (*Id.* at 5).  Ricks and Campbell then "conspire[d] and []charge[d Plaintiff] with

3

[a] fabricated disciplinary infraction moments after [Plaintiff] threatened to file a grievance against officer(s)." (*Id.*). Plaintiff was placed in disciplinary segregation for three days with "no procedural safeguards." (*Id.*).

Plaintiff claims retaliation against him for attempting to exercise his freedom of speech, a chill on his free-speech rights, a Privacy Act violation and denial of due process. (*Id.* at 5-7). Plaintiff states that he "has attempted and tried every administrative remed[y]," and he also has "completed the administrative appeal process, as far as he was allowed," regarding his disciplinary segregation. (*Id.* at 8; *see* Doc. 1-1 at 27-29, 48-56).

Plaintiff adds further details in an attachment to his complaint. (Doc. 1-1 at 43-47 (Pl.'s Ex. 2)). At 7:52 p.m. on November 6, 2015, Ricks let Plaintiff out of his cell for a video visit, but told Plaintiff that he could not take pen and paper into the video booth. (*Id.* at 43). Plaintiff returned the items to his cell and asked for a pre-grievance form, but Ricks ignored him. Plaintiff's visit ended at 8:25 p.m. (*Id.*). He asked Ricks for his cup so he could get a drink of water before his next visit at 8:30 p.m., but Ricks did not allow it, and he again ignored Plaintiff's request for a pre-grievance form. (*Id.*). Plaintiff's second video visit ended at 9 p.m. Ricks started free time for Plaintiff's floor at 9:05 p.m. (*Id.*).

4

Plaintiff asked Ricks for two pre-grievance forms to grieve the video booth rules and the denial of drinking water, but Ricks refused. (*Id.* at 44). Plaintiff and Ricks went "back and forth for a couple of minutes" about whether Plaintiff could grieve these matters. Their discussion was interrupted by pill call, which lasted from 9:15 to 9:35 p.m. (*Id.*). At 9:42 p.m., Plaintiff handed Ricks an Open Records Act request for the GCDC visitation policy at issue. Ricks told Plaintiff that he had called for Campbell. At about 10 p.m., Campbell arrived and discussed the situation with Ricks. Shortly after 10 p.m., Plaintiff was summoned by loudspeaker to the deputies' desk, where Ricks and Campbell were waiting. (*Id.*).

Campbell handed Plaintiff a copy of the GCDC policy, in response to his open records request, and told Plaintiff that he could not bring anything with him into the video booth. (*Id.* at 45). Plaintiff asked Campbell about bringing a Bible and pen or pencil to visitation or bringing a pen to the attorney booth. Campbell became agitated. He refused to give Plaintiff a pre-grievance form unless Plaintiff first told him what he planned to write. Plaintiff said he was not required to do so. (*Id.*).

Campbell then "explode[d] and [said] if [he tells Plaintiff] to stand here till midnight, [Plaintiff] will fucking stand here (screaming)." (*Id.* at 46). Plaintiff smiled and "sort of" giggled. (*Id.*). Campbell asked Plaintiff if he thought this was funny, if

5

he thought Campbell was "stupid or blind," and if he had just called Campbell "retarded or a fucking idiot." Plaintiff said no. (*Id.*). Campbell then terminated Plaintiff's free time and sent him to his cell. Plaintiff turned around, and on the way to his cell giggled to himself "at the stupidity" of Campbell. Campbell stopped Plaintiff, said something about Plaintiff "thinking this is funny" and told Plaintiff to pack his stuff. (*Id.*).

Two response-team members arrived 20 minutes later to take Plaintiff to administrative segregation. (*Id.* at 47). Campbell tried to hand Plaintiff a grievance form, but Plaintiff told him "never mind" because his roommate had obtained some forms for him. Campbell told Plaintiff he was going to segregation for three days for insubordination. (*Id.*).

Plaintiff seeks declaratory and injunctive relief — including expunging the disciplinary charge at issue from his GCDC records and requiring safeguards to prevent future violations of inmates' free speech and due process rights — as well as compensatory and nominal damages. (Doc. 1 at 9-11).

B.    **Plaintiff's Amended Complaints**

In his first amended complaint, Plaintiff seeks to add Southard and Suddeth and other unknown GCDC "classification" deputies as Defendants in this action. (Doc. 7

6

at 1-2).  He alleges that he is housed with "a mentally ill and admitted confidential informant" (*id.* at 1), and that after this inmate was moved into his cell on January 28, 2016, he handed "numerous [pre-]grievances" to Suddeth on January 30, all of which were returned to Plaintiff because he could not grieve the issue (*id.* at 2-3; *see id.* at 11-12).  Plaintiff filed "3 formal grievances" between January 29 and 30 "to complete [his] administrative remedy."  (*Id.* at 3).

Plaintiff alleges retaliation for filing this, his second, lawsuit against GCDC officials — to wit, four response-team searches and the placement of a mentally ill confidential informant in his cell.  (*Id.* at 3-4).  Plaintiff alleges that his cellmate "admits . . . he feels like hurting himself and how he[ is] always depressed."  (*Id.* at 4 (also alleging that his cellmate talks to himself, is filthy, and never cleans up after himself)).

Plaintiff claims First Amendment retaliation, an Eighth/Fourteenth Amendment violation for giving him a mentally ill cellmate, and a Fourth/Sixth Amendment violation for interfering with his attorney-client privilege by placing a confidential informant in his cell.  (*Id.* at 3-7).  Plaintiff seeks injunctive relief to prevent a confidential informant from being placed in his cell and to separate mental health inmates from the general inmate population at the GCDC.  (*Id.* at 8).

In his second amended complaint, Plaintiff seeks to add a claim of retaliation for filing this lawsuit — being placed in administrative segregation on February 5, 2016, "the day [his] second supplemental complaint landed on the district court docket," and thereafter being permanently housed in a segregation unit; an access-to-courts claim "for being forced to trash 5000 plus pages of legal work"; and a Fourteenth Amendment due process claim for being denied "the right to stay in general population." (Doc. 8 at 2, 6). Plaintiff seeks damages to compensate for his suffering while in administrative segregation and an injunction prohibiting his placement there in the future. (*Id.* at 10).

### C.    Plaintiff's Causes Of Action

#### 1.    Denial Of Plaintiff's Requests For Grievance Forms

Plaintiff has no federal constitutional right to a grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[A]s various circuits have held when ruling on an inmate's claim that he was denied use of a prison's grievance procedure, an inmate has no constitutionally-protected liberty interest in access to that procedure."); *see also Jernard v. Comm'r, Ga. Dep't of Corr.*, 457 Fed. Appx. 837, 840 (11th Cir. 2012) (citing *Bingham* and stating that the Eleventh Circuit "has specifically held that there is no constitutionally-protected liberty interest in access to

8

a grievance procedure provided for voluntarily by a prison"). Plaintiff's allegations that Ricks and Campbell denied him pre-grievance forms fail, therefore, to state a plausible § 1983 claim for relief.

## 2.    Retaliation For Seeking To File Grievances

Plaintiff has a right to request grievance forms without fear of retaliation.

> It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. *See, e.g., Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. *Id.* To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *see id.* at 1276 n.15 (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006), to the effect that the "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment").

But here, Plaintiff has not alleged a plausible claim of retaliation. His

9

complaints to Ricks and Campbell about GCDC policies are indeed constitutionally protected, and it may be that a person of ordinary firmness would be deterred from persisting in such complaints after being placed in administrative segregation for three days — although it is apparent that Plaintiff was not so deterred because he continued to file "numerous grievances" after his brief administrative detention.  (*See* Doc. 1 at 8; Doc. 7 at 3; Doc. 1-1 at 27-29, 48-56).  Even so, Plaintiff has not plausibly alleged "a causal relationship between the retaliatory action and the protected speech." *See Mosley*, 532 F.3d at 1276.  Plaintiff spent more than an hour on November 6, 2015 requesting pre-grievance forms from Ricks and Campbell; these requests were denied; and when Plaintiff became insistent, Campbell ordered him to return to his cell.  (Doc. 1-1 at 43-47).  Then, when Campbell observed Plaintiff continuing to giggle and apparently making fun of him, he ordered Plaintiff to administrative segregation.  (*Id.* at 46).  Campbell shortly thereafter offered Plaintiff a pre-grievance form.  (*Id.* at 47).

Plaintiff's own account of the November 6, 2015 incident thus reveals an intervening cause for his discipline — his smiling and giggling, which Campbell took to be insulting and considered insubordination on Plaintiff's part, warranting the discipline that Campbell imposed.  Whether or not Campbell overreacted misses the point.  Plaintiff has not plausibly alleged that Campbell disciplined him because

10

Plaintiff asked for pre-grievance forms, which Campbell eventually offered him, rather than because Campbell considered Plaintiff's actions insubordinate to a GCDC officer. Plaintiff's First Amendment retaliation claim fails.

### 3.    Due Process Violation

"The minimum requirements of due process for prisoners facing disciplinary action . . . are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), to the effect that "prisoners may not be deprived of statutory 'good-time credits' without due process"). The decision of a prison disciplinary board satisfies constitutional due process requirements if it is supported by at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

But these requirements attach only when a prisoner has been deprived of *a constitutionally protected liberty interest*, such as a change in the conditions of his confinement so severe that it essentially exceeds the sentence imposed by the court or a deprivation of some benefit resulting in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Kirby v. Siegelman*, 195

11

F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Sandin*, 515 U.S. at 483-84 ("recogniz[ing] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [such as a] transfer to [a] mental hospital [or the] involuntary administration of psychotropic drugs[], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (citations omitted)); *Averett v. Bonner*, 1:12-cv-04007-AKK-JEO, 2014 U.S. Dist. LEXIS 115196, at *1, 20-21 (N.D. Ala. July 9) (recommending summary denial of pretrial detainee's due process claim alleging he was placed in isolation in violation of his constitutional rights; and noting that in *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004), the Eleventh Circuit applied *Sandin*'s "atypical and significant hardship standard for state-created liberty interests to a pretrial detainee" (internal quotations omitted)), *adopted by* 2014 U.S. Dist. LEXIS 114714 (N.D. Ala. Aug. 19, 2014).

Plaintiff's placement in administrative segregation for three days is not an atypical and significant hardship that gives rise to a due process claim. *See Sandin*,

515 U.S. at 486 (concluding that prisoner's "discipline in segregated confinement [for 30 days] did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Plaintiff was not deprived of a liberty interest protected by the Constitution, and therefore he was not due any process at all *under federal law*, either before or after being sent to administrative segregation for three days. Plaintiff's federal due process claim fails.

### 4.   <u>Privacy Act Violation</u>

To support his Privacy Act claim, Plaintiff alleges "inaccurate records, agency intent, proximate causation, and adverse determination." (Doc. 1 at 6). He states that "proven, retaliatory fabrication of prison records would certainly meet the definition of a willful[] or intentional Privacy Act violation." (*Id.*). Plaintiff cites two subsections of the Freedom of Information Act, 5 U.S.C. § 552, not of the Privacy Act, 5 U.S.C. § 552a: (1) 5 U.S.C. § 552(g)(1)(c), a subsection that does not actually exist; and (2) 5 U.S.C. § 552(A)(1)(c), by which Plaintiff may have intended § 552(a)(1)(C), a subsection that requires every *federal* agency to "separately state and currently publish in the Federal Register for the guidance of the public[] rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations."

13

§ 552(a)(1)(C).  This latter subsection, although it does exist, does not help Plaintiff either.

Plaintiff more likely intended to cite 5 U.S.C. § 552a(g)(1)(C), which is indeed a subsection of the Privacy Act, and which provides civil remedies when an agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

§ 552a(g)(1)(C).  But "agency" as used in § 552a(g)(1)(C) means "agency as defined in section 552[(f)(1)] of this title," 5 U.S.C. § 552a(a)(1), which in turn refers to agencies of the federal government, i.e., " 'agency' as defined in section 551(1) of this title[, which] includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f)(1); *see* 5 U.S.C. § 551(1) ("For the purpose of this subchapter [5 U.S.C. §§ 551 *et seq.*]—(1) 'agency' means each authority of the Government of the United States . . . .").

In short, Plaintiff may not sue under § 552a(g)(1)(C) of the Privacy Act based

14

on an alleged fabrication in the records of a state or county agency.  His Privacy Act claim therefore fails.  *See Ferguson v. Alabama Crim. Justice Info. Ctr.*, 962 F. Supp. 1446, 1447 (M.D. Ala. 1997) ("5 U.S.C. §§ 552 and 552(a) . . . do not apply to state agencies." (citing 5 U.S.C. § 551(1) to the effect that "[a]gency means each authority of the government of the United States. . . ."; *St. Michael's Convalescent Hospital v. State of Cal.*, 643 F.2d 1369 (9th Cir. 1981), to the effect that "§§ 552 and 552(a) are applicable only to agencies and under application definitions, 'agency' [does] not encompass state agencies or bodies"; *Shields v. Shetler*, 682 F. Supp. 1172 (D. Colo. 1988), to the effect that the "Privacy Act does not apply to state agencies or bodies")); *see also Stewart v. Fla. Dep't of Educ. & Voc. Rehab. Div.*, No. 5:09-cv-285/RS/CJK, 2012 U.S. Dist. LEXIS 58998, at *18 (N.D. Fla. Mar. 28, 2012) ("The Privacy Act of 1974 ('Privacy Act'), 5 U.S.C. § 552a(b), 'imposed upon federal agencies an array of record-keeping obligations to prevent unauthorized disclosures of confidential information.' *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010). As a corollary, however, the private right of action created by the Privacy Act only applies to federal agencies. *See Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003) (holding that non-disclosure obligations under the Privacy Act apply only to *federal* agencies). In

15

light of [defendant's] undisputed status as a state agency, plaintiff has not articulated a plausible claim for relief under the Privacy Act."), *adopted by* 2012 U.S. Dist. LEXIS 58997 (N.D. Fla. Apr. 27, 2012).

**5.    Plaintiff's Additional Claims In His Amended Complaints**

In his first amended complaint, Plaintiff raises Eighth/Fourteenth Amendment and Fourth/Sixth Amendment claims against Deputies Southard, Suddeth and unknown classification deputies, as well as a claim that he has been retaliated against for filing this lawsuit.  (Doc. 7 at 3-7).  In his second amended complaint, without naming any Defendant in particular other than the Sheriff, Plaintiff again claims retaliation and complains about the loss of his legal papers and the classification decision that has placed him permanently in administrative segregation.  (Doc. 8 at 1-2, 6-7, 10).

But Plaintiff may not use a single complaint to join his claim against Deputies Southard, Suddeth and unknown classification deputies with his claims against Ricks, Campbell and the other Defendants named in his original complaint because these separate claims do not *both* (a) arise from "the same transaction, occurrence, or series of transactions or occurrences" *and* (b) involve a "question of law or fact common to all defendants."  *See* Fed. R. Civ. P. 20(a)(2)(A)-(B); *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 Fed. Appx. 859, 860 (11th Cir. 2010) ("Here, the district court did not

16

abuse its discretion in dismissing [appellant's] case without prejudice because [he] failed to comply with the magistrate's order to comply with Rule 20(a) when he did not show that the claims against the defendants arose out of the same transaction, occurrence, or series of transactions or occurrences but instead claimed that many different transactions and occurrences were related because they showed the defendants' overall indifference to his medical conditions.  The actions of the defendants named by [appellant] appear to be separate incidents, ranging from feeding [him] inedible food to leaving him in isolation to not giving him proper medical care to improperly convicting him of a crime, occurring on different dates, and thus, while [he] alleges that the actions of each defendant showed indifference to his failing health, there appears to be no other alleged connection between the people and events [he] described." (citations omitted)); *Gardner v. County of Baldwin*, No. 12-00639-CG-B, 2013 U.S. Dist. LEXIS 170812, at *7-8 (S.D. Ala. Dec. 4, 2013) ("To determine whether claims arise from the same series of transactions or occurrences under Rule 20(a)(2), courts in the Eleventh Circuit apply the logical relationship test.  Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim. In other words, there is a logical relationship when the same operative facts serve as

17

the basis of both claims." (citations and internal quotations omitted)); *see also Smith v. Warden, Hardee Corr. Inst.*, 597 Fed. Appx. 1027, 1030 (11th Cir. 2015) ("The district court [] did not abuse its discretion when it dismissed Smith's original complaint for noncompliance with Federal Rule of Civil Procedure 20(a).  A complaint against multiple defendants must allege claims that arise 'out of the same transaction, occurrence, or series of transactions or occurrences' and that involve a 'question of law or fact common to all defendants,' Fed. R. Civ. P. 20(a), but Smith's complaint alleged three unrelated claims against different officials. Smith complained that the Warden, the supervisor of library services, and Connor interfered with his right of access to the courts in violation of the First and Fourteenth Amendments and state law; the Warden and Eugenia Wellhausen, an employee of the Department, conducted unreasonable searches of his cell in violation of the Fourth Amendment; and the Warden, Connor, and Wellhausen supplied inadequate clothing and bedding to protect inmates against the weather in violation of the Eighth Amendment. Smith's status as a *pro se* litigant did not relieve him of the obligation to comply with Rule 20(a).").

There are no common Defendants and no logical connection between Plaintiff's claims in his original complaint and his claims in his amended complaints, so that the latter claims should also be dismissed because Plaintiff cannot join together all of his

18

claims against the named Defendants in a single lawsuit.[1]  He is free to re-file his amended complaints as separate lawsuits, and after he arranges for the payment of the filing fee in those separate cases, the Court will review his claims for frivolity.

### 6.   Motion For Preliminary Injunction

Plaintiff's motion for a preliminary injunction (Doc. 10) and motion in support thereof (Doc. 11) concern his allegedly permanent placement in administrative segregation (*see* Doc. 10), are due to be denied for the same reason that his attempts to amend his complaint should be denied.

## III.   CONCLUSION

_____

[1]Although Plaintiff purports to sue Sheriff Conway, Col. Pinkard and Maj. Hughes in both complaints, he has not alleged any action or failure to act on the part of these three supervisory officials, and thus he has failed to state a plausible claim for relief against any of them.  He alleges only that Sheriff Conway is "legally responsible for the overall operations of the Gwinnett County Sheriff's Department" and thus of the GCDC; that Col. Pinkard, the Jail Commander, "is responsible for the overall operations of the [GCDC] and for the welfare of all the inmates"; and that Maj. Hughes "is in charge of jail operations." (Doc. 1 at 3).  But a supervisor may not be sued under § 1983 solely because of his supervisory capacity.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"; and also noting that "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous").  Plaintiff's perfunctory allegations against Conway, Pinkard and Hughes do not meet this standard.  *See Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives."  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct.").

For the foregoing reasons, **IT IS RECOMMENDED** that the claims in Plaintiff's original complaint (Doc. 1) be **DISMISSED with prejudice** and that the claims in his amended complaints (Docs. 7, 8) be **DISMISSED without prejudice**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's first set of Consolidated Motions (Doc. 5); second set of Consolidated Motions (Doc. 9 (Motion To Withdraw Additional/Supplemental Issue; Motion To Add Infraction 2A/B Plus Appeal 2A/B)), whose purpose is unclear; Motion To Advance The Cause For Preliminary Injunction (Doc. 10); and Motion In Support For Preliminary Injunction And Other Motives (Doc. 11) be **DENIED**; and that this action be **CLOSED**. *See* 28 U.S.C. § 1915A.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO ORDERED and RECOMMENDED** this <u>24th</u> day of <u>March</u>, 2016.

    /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

20